**KANSAS CITY, Missouri, a municipal corporation, Appellant,**

**v.**

**George A. MARTIN, Respondent.**

**No. 24016.**

Kansas City Court of Appeals.

Missouri.

April 5, 1965.

Motion for Rehearing and for Transfer to Supreme Court Denied June 7, 1965.

Application to Transfer Denied July 12, 1965.

Herbert C. Hoffman, City Counselor, James H. Herbert and Timothy D. O'Leary, Asst. City Counselors, Kansas City, for appellant.

Robert L. Shirkey, Kansas City, for respondent.

CROSS, Presiding Judge.

This is an action on account wherein plaintiff city seeks to recover of defendant Martin the sum of $3,132.45, with interest, for hospitalization and treatment for nervous and mental disorder at the Psychiatric Receiving Center, a division of General Hospital which is operated by the city. A jury waived trial on stipulated facts resulted in a judgment that plaintiff recover nothing on its petition. Plaintiff appeals.

This case involves the same subject matter which gave rise to a former action in which Martin, as plaintiff, sued and recovered damages from the City of Kansas City, as defendant, for personal injuries resulting from the city's negligence.[1] The facts and circumstances essential to a determination of this appeal are here noted.

On June 3, 1952, Martin duly notified the Mayor of Kansas City that he was making claim for personal injuries sustained as a result of negligence on the part of the city. Following this notice and on August 27, 1952, Martin filed his original petition for damages in case No. 113,933, at Independence, in Jackson County, styled "George A. Martin v. Kansas City, Missouri and Walter S. Buie", praying an award of $40,-000.00. This petition was duly answered by the city.

On September 19, 1957, Martin presented himself for treatment at the Psychiatric Receiving Center and was admitted after an interview which tended to establish that he was indigent and unable to pay for the care and treatment he requested. He received medical care and attention as an in-patient until March 21, 1958 for a total of 113 days.

Again, as an in-patient, he received care from July 21, 1958, through July 31, 1959, for a total of 80 days. From July 28, 1958 through April of 1959 he received outpatient care aggregating 10 days. Between August 3, 1959 and September 3, 1959 he was given day hospital care for 20 days. It is agreed that the reasonable value of these services totaled $3,100.65 and that no portion of that sum has been paid by Martin.

Thereafter, on October 1, 1959, Martin filed his first amended petition for damages in case No. 113,933, in which he alleged that as a result of the city's negligence his nerves and nervous system were greatly injured, and that he suffered a nervous breakdown and mental difficulties and required hospital care and treatment as a result therefrom. The pleading contained a prayer for damages in the sum of $150,-000.00. The City of Kansas City timely refiled its original separate answer as its answer to plaintiff Martin's first amended petition but at no time filed a counterclaim in case No. 113,933.

Martin's suit for personal injuries proceeded to trial and on October 29, 1959 resulted in a verdict and judgment in his favor against the city (present plaintiff) in the amount of $30,000.00, from which the city appealed to the Supreme Court. During the trial, counsel for defendant interrogated plaintiff in the hearing of the jury as follows:

"Q. (By Mr. Wurdack) This hospitalization you have told us about here in Kansas City at the Psychiatric Research Center, a period of five and a half months a year ago, and a couple of months ago for thirty days, that treatment has been entirely without cost to you, hasn't it?

"A. (By plaintiff) Yes, sir".

The above quoted question and answer provoked the following objection by plain-

---

1. See Martin v. Kansas City, Mo.Sup., 340 S.W.2d 645.

tiff's counsel, ruling of the court and re-mark of counsel:

"MR. SHIRKEY: If the court please, he is liable to pay the city should he receive any award in this case, and I object to that question.

"THE COURT: Overruled; he says he has not paid them now.

"MR. SHIRKEY: Of course, he hasn't, but he is liable to pay them, liable for that should he get a judgment".

No bill for hospital services was ever presented to Martin or to his attorneys until after his case against the city was tried and reduced to judgment. On January 27, 1960, the city presented its bill of charge to Martin's attorneys. Such a bill was never presented to Martin personally.

"Sometime" in 1960 the appeal from Martin's judgment against the city came on for hearing in the Supreme Court and was duly argued and submitted. One of the issues raised by the city was "excessiveness" of the judgment. In the course of argument on the question, counsel for Martin exhibited the city's hospital bill for $3,-100.65 to the court and the bill was "put in their files". The result of the appeal was an affirmance of Martin's judgment as rendered in the trial court.

The original judgment sum of $30,000.00, with accrued interest, appears to have accumulated to "thirty-two some thousand dollars". The city paid Martin $29,345.05 on the judgment but left the balance outstanding and unpaid. Martin filed a mandamus action against the city to compel it to pay the remaining judgment balance, but the record before us does not clearly disclose the ultimate disposition of that proceeding.

The city filed the present action on March 10, 1961. The petition in form and substance is a conventional statement of a cause of action on account. The city states in its brief that its claim for medical service against Martin was a conditional obligation enforceable under the following quoted provisions of Chapter 28, Section 28.020, Revised Ordinances of Kansas City, Missouri, 1956:

"CITY HOSPITALS — WHEN FEES TO BE EXACTED; FEES, HOW SET.—All patients in hospitals and clinics owned and operated by the city, able to pay, as determined by the director of health, shall be required to pay for their care and treatment insofar as they are able to do so, * * *

"The director of health is hereby authorized to set a schedule of fees for bed, board and routine nursing care * * * and for all laboratory procedures, special treatment or drugs * * to those patients, who: * * *

"(c) *Benefit from the settlement of personal injury claims relating to injuries treated at a municipal hospital * * *"*. (Italics supplied.) (Or who, according to the city's interpretation, "benefit from the collection of a judgment".)

In his answer to plaintiff city's petition defendant Martin interposed three defenses, in essence as follows: (1) Plaintiff waived its claim by failing to file a counterclaim in Martin's negligence action as required by Section 509.420 V.A.M.S. and is consequently estopped by judgment to maintain this action. (2) Plaintiff is estopped to assert its claim because no demand or claim was presented defendant until after his suit for damages was reduced to judgment, with the result that defendant was unable to present the city's charges as elements of special damages sustained by reason of the city's negligence. (3) The claim is barred by the statute of limitations. Defenses numbered (1) and (2) are reasserted by defendant as appeal contentions. However the defense of statutory limitation seems to have been abandoned by defendant, inasmuch as his brief makes no reference to it.

On behalf of plaintiff it is generally contended that the judgment is erroneous for the reason that the city was entitled to a judgment as a matter of law. More specifically plaintiff directs its brief to the above noted defenses raised by Martin by contending, counterwise: (1) That this suit was not the subject of a compulsory counterclaim as is contemplated by Section 509.420 V.A.M.S., and (2) that plaintiff is not estopped from asserting this claim for the reasons urged by defendant. Therefore, says the city, both of the stated defenses fail and as a consequence the judgment against it is without support or justification.

At the outset of this review, we cannot overlook this obvious fundamental question: What effect, if any, does the prior judgment have upon the validity of the city's claim against Martin? The answer will derive from an application of the facts underlying both actions to that branch of the law defining the rights and liabilities both of a tort feasor and a person who has suffered a legal wrong and injury at his hands, considered together with the law treating of the finality and conclusive effect of judgments.

■ It was conclusively established by the final judgment rendered in case No. 113,933 that Martin received personal injuries as a result of negligence on the part of the city which required extensive hospital and medical treatment by the psychiatric facilities of the city's General Hospital. Under this state of adjudicated facts the city became liable to Martin for all damages arising from his injuries which the law recognizes as compensable. This comports with the fundamental principle that a person who is injured by another's breach of duty is entitled to recover just compensation as indemnity or reparation for his loss or injury.

■ It is elementary that when a wrongfully inflicted injury has rendered necessary the procuring of medical and hospital services and treatment, the injured person is entitled to reparation and may recover from the wrongdoer the reasonable value of such care, whether he has paid therefor or has only incurred obligation to do so. So it is in this controversy. Under its general liability to Martin for damages arising from his injuries and resulting conditions of disability, the city was specifically obligated either to pay him damages amounting to the reasonable value of hospital and medical service necessary to restore him, or to furnish such care in specific form through its own or other· available facilities.

■ Inasmuch as Martin chose to avail himself of direct reparation by requesting and receiving medical treatment from the city's own hospital, for which no charge was made, the city was thus relieved of its obligation to pay money damages for that particular element of recovery. As stated in McCormick on Damages, Sec. 90, p. 325, "(T)his bars any claim for such item". See Consolidated Arizona Smelting Co. v. Egich, 22 Ariz. 543, 199 P. [132] 136, where plaintiff received medical care at defendant's hospital without charge, and defendant was thereby relieved of liability to pay money damages. In like manner the city removed from Martin's lawsuit the element of liability to pay money damages representing this portion of the cost of his hospital and medical expense.

During trial of the former case, the city directly injected the issue of Martin's medical and hospital treatment and its attendant cost, obviously for the purpose of eliminating that item from the consideration of the jury as an element of damages. Interrogation of plaintiff Martin by the city's counsel, hereinabove quoted, permitted by the court over objection by Martin's counsel, effectively told the court and jury *that Martin had been furnished treatment and care at the city's hospital without cost.*

■ Under the presumption that the jury received and observed proper instruc-

tions it is necessarily our view that no portion of its verdict was intended as an award of damages for the cost of hospital and medical services and that the verdict was necessarily predicated on a finding that Martin's legal entitlement to such an award had been satisfied by receiving actual specific care and treatment at the city's hospital *in lieu of money damages.* No other result could have been properly reached under the evidence and applicable law. Thus the judgment entered on the verdict became a complete and final determination of the issue tendered.

"It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief". 30A Am.Jur., Judgments, Section 371, p. 411, quoted by the Supreme Court, with approval, in Norwood v. Norwood, 353 Mo. 548, 183 S.W.2d 118, l. c. 123.

Observing the foregoing doctrine which is consistently followed by Missouri courts, we necessarily rule that the question tendered in issue by the city in this case was conclusively settled by the former judgment and cannot be relitigated. In the first case these identical parties contested the issue of whether Martin was entitled, as a matter of right, to indemnity for his medical expense. The judgment rendered amounted to a declaration of his legal entitlement to

the specific services he received from the city. The present action presents the same issue but in a different form. It is designed to divest Martin of *all* indemnity for his medical expense by the effect of a subsequent judgment which would take from him the money value of the medical services he received and were adjudicated by the first judgment to be his lawful entitlement. This particular question of ultimate fact has been finally concluded and must remain at rest. Such reason alone is sufficient to support the trial court's judgment.

■ However, we find additional reason —equally fundamental in nature—to agree with the trial court's decision. It is apparent from the record that *no valid cause of action ever accrued in the city's favor on its presently asserted claim.*

■ The city concedes that it had no case against Martin until his judgment became final, but theorizes that the affirmance of the judgment on appeal transformed the "conditional" claim against Martin (based on the above quoted ordinance) into a matured cause of action. The attempted rationale of this theory is that *after* the affirmance and as a consequential effect thereof, Martin would "benefit from the settlement of personal injury claims relating to injuries treated at a municipal hospital" and thereby become liable to pay the city for his hospital services. This concept is founded on fallacy. The ordinance on which the city relies is not available as the basis of this claim because it does not take into account the factor of the city's finally adjudicated liability for the "injuries treated". A municipal ordinance cannot be held to contravene substantive law which placed the duty upon the city to either (1) pay Martin the reasonable value of the services in question or (2) provide those services without cost to him.

■ The city affirmatively contends that the hereinabove set out statements made by Martin's counsel during trial of the former action constitute judicial ad-

missions of liability binding on his client. In general, and in accordance with authority cited by the city, it is the accepted rule that "Distinct and formal admissions of fact made by counsel during the progress of a civil or a criminal trial are binding on the client when made for the express purpose of dispensing with formal proof". 7 Am.Jur.2d, Sec. 122, p. 121; Wehrli v. Wabash Railroad Co., Mo.Sup., 315 S.W. 2d 765.

However, the authority of an attorney for such purpose is limited to statements or admissions of fact, and neither the client nor the court is bound by the attorney's statements or admissions as to matters of law or legal conclusions. 7 C.J. S. Attorney and Client § 100, p. 922. It is also recognized that improvident or erroneous statements or admissions resulting from unguarded expressions or mistake should not be binding on the client. 7 C.J.S. Attorney and Client § 100, p. 922; Couch v. Landers, Mo.Sup., 316 S.W.2d 588. And, "Generally, an attorney has no implied or apparent authority to acknowledge the existence of an indebtedness on the part of his client." 7 C.J.S. Attorney and Client § 102, p. 924, quoted with approval in Couch v. Landers, supra. In view of these clearly expressed limitations we cannot agree that the remarks of counsel referred to should be held to create a liability on the part of Martin and give rise to a cause of action by the city where none has ever existed as a matter of substantive right.

Finally, the city contends that Martin is estopped to deny that he is indebted to the city under the rule that a party will not be allowed to maintain inconsistent positions in successive legal proceedings. In arguing this point the city insists that "defendant cannot enjoy the benefits of his counsel's remarks telling the jury that defendant was liable to pay the city for these hospital expenses should he recover a judgment, and defendant cannot enjoy the benefit of using these bills as evidence in the Supreme Court to support the amount of his award". In support of this argument the city's brief contains the following general statement of the rule upon which it relies, which we accept as essentially correct: "An estoppel may come into existence because of the conduct or action of a person in a court, and it is generally recognized that a party who has knowingly and deliberately assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the prejudice of the adverse party. Accordingly, it has frequently been stated that where a party assumes a certain position in a legal proceeding, *and succeeds in maintaining that position,* he may not thereafter, simply because his interests have changed, assume a position to the contrary, especially if it is to the prejudice of the party who has acquiesced in the position formerly taken by him." (Emphasis supplied.) 31 C.J.S. Estoppel § 117, p. 610.

Essential requirements for application of this particular rule of estoppel are absent from this case. We first observe that Martin's counsel did not succeed in maintaining the position he sought to establish in the former trial, to-wit, that Martin would have to pay the city if he got a judgment. Instead, the city prevailed upon the court to accept its own position, contrarily asserted, and to admit evidence reasonably calculated to induce the jury's belief that the city would make no demand upon Martin. Again assuming that the jury was properly instructed and returned a verdict in accordance therewith and with due regard for the evidence, we are caused to believe the city suffered no prejudice from the remarks of counsel complained of. Nor do we attach significance to the incident which occurred during argument of the appeal. The Supreme Court was without authority to consider the city's hospital bill as evidence on any appeal issue, and we must therefore assume that the exhibition of the document had no undue influence on the court and resulted in no prejudice to the city.

There is further reason to reject the "inconsistent position" doctrine of estoppel as a bar to Martin's defense. Usually the rule is applicable only to bar the assumption of inconsistent positions as to factual matters and is not to be applied where a party assumes inconsistent positions as to contentions of law as applied to a given state of facts. Consequently, a change of position with respect to a pure matter of law ordinarily will not work an estoppel, particularly where the earlier position has been found unsound or untenable. 31 C.J.S. Estoppel § 117, p. 613; Christy v. Great Northern Life Ins. Co., 238 Mo.App. 525, 181 S.W.2d 663; Charter Oak Inv. Co. v. Felker, Mo.App., 60 S.W.2d 655. In the present instance, it is apparent that any change of position attributable to Martin's counsel relates only to an ultimate legal conclusion to be drawn from undisputed facts, and that no change of position has been taken with respect to the facts themselves. We rule that no estoppel operates to bar Martin from his present defense.

The judgment is for the right party and should be affirmed.

It is so ordered.

All concur.