**MOBIL–TERIA CATERING COMPANY,
INC., Appellant,**

v.

**James R. SPRADLING, Department of
Revenue, State of Missouri,
Respondent.**

**No. 60323.**

Supreme Court of Missouri,
En Banc.

Dec. 18, 1978.

Rehearing Denied Feb. 13, 1979.

Robert W. Brown, Robert E. Fitzgerald, Jr., Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., J. Kent Lowry, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

This action involves the question whether appellant, Mobil-Teria Catering Company, was properly assessed .5% of its gross receipts under either the Public Mass Transportation Tax, § 92.400 *et seq.*, RSMo Supp. 1971, as amended, or the Transportation Sales Tax, § 94.600 *et seq.*, RSMo Supp. 1973. The case originated as a Petition for Reassessment before the Department of Revenue. Upon adverse decision by the Director of Revenue, appellant obtained review by the Circuit Court in the Sixteenth Judicial Circuit, and since the action involves construction of the revenue laws of the state, the Supreme Court has exclusive appellate jurisdiction under Mo. Const. Art. V, § 3.

Mobil-Teria provides cigarettes, sandwiches, coffee and other food items to persons at construction, industrial and other employment sites in the Kansas City region. A company commissary, kitchen, offices and garage are located at a central facility in Kansas City, Missouri. No sales are made directly to the public at the central facility. Rather, approximately sixty-five trucks are dispatched daily with the items for sale to pre-established stops along regular routes. At the beginning of each day, Mobil-Teria's drivers check out the food and sundries

from the central facility. At the end of the day the drivers return to the central facility and turn in their money and left-over items. Some of the truck routes are wholly within Kansas City. Others are wholly outside the city in Kansas or in the four Missouri counties surrounding Kansas City. Still others are partially within Kansas City and partially in the surrounding areas. Although the total daily sales for each route are recorded by the company, the amount of sales made at any particular stop or segment of a route apparently cannot be determined. Only the tax liability for the routes which are wholly in Missouri counties surrounding Kansas City is at issue in this action.

The Public Mass Transportation Tax, § 92.400 *et seq.*, and Transportation Sales Tax, § 94.600 *et seq.*, are closely similar statutes which authorize specified Missouri cities to enact a sales tax of .5% of gross receipts to finance transportation expenditures. Section 92.400 was enacted in 1971. Section 94.600 was enacted in 1973. Among other differences the later statute permits the revenue collected to be expended for a wider variety of purposes. However, under both statutes, once a municipality has enacted a transportation tax ordinance, the revenues are collected by the Missouri Director of Revenue in the same method provided in §§ 144.010 to 144.510, RSMo 1969, for the collection of the state sales tax. The revenues are then disbursed to the taxing municipality at specified intervals. Both statutes also provide, in identical terms, that,

"  .   .   . all retail sales shall be deemed to be consummated at the place of business of the retailer unless the tangible personal property sold is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination. In the event a retailer has more than one place of business in this state which participates in the sale, the sale shall be deemed to be consummated at the place of business of the retailer where the initial order for the tangible personal property is taken, even though the order must be forwarded elsewhere for acceptance,

approval of credit, shipment or billing. A sale by a retailer's agent or employee shall be deemed to be consummated at the place of business from which he works." § 92.408(5), RSMo Supp. 1971, and § 94.620(5), RSMo Supp. 1973.

Pursuant to § 92.400 *et seq.*, Kansas City enacted Ordinance No. 42073 which was to become effective on January 1, 1973. It was to cease to be effective on September 30, 1973, unless further extended by ordinance. In August, 1973, effective October 1, 1973, Kansas City enacted Ordinance No. 43171 imposing a tax under 94.600 *et seq.* and expressly repealing the prior ordinance enacted pursuant to § 92.400 *et seq.* Thus, while retailers in Kansas City were continuously taxed at the same rate and for generally similar purposes, the taxes were imposed under the authority of two separate sets of statutes and ordinances, with the earlier ordinance being expressly repealed by the enactment of the later ordinance.

On April 24, 1975, the Department of Revenue assessed appellant under the Public Mass Transportation Tax statutes, § 92.-400, in the amount of $5,987.87 for failure to make total payments due under the Kansas City ordinance for the periods April through November, 1973, and January through July, 1974. This assessment, as subsequently affirmed by the respondent and by the Circuit Court of Jackson County, is challenged on the ground that the respondent does not have the authority to assess the appellant on sales by Mobil-Teria drivers that occur in areas outside the city limits of Kansas City, Missouri.

We agree. As a general rule, "a municipal corporation's powers cease at its municipal boundaries, and cannot, without a plain delegation of the necessary power from a proper authority, be exercised outside its geographical limits." *City of St. Louis v. Lee,* 132 S.W.2d 1055, 1057 (Mo. App. 1939). "So far as governmental functions are concerned, it is elementary that a municipal corporation has no extraterritorial powers." *City of Sedalia v. Shell Petroleum Corporation,* 81 F.2d 193, 196 (8th Cir.

1936). A municipal corporation has "no authority to exercise any control over territory beyond its borders." *Douglas v. City of Kansas City*, 147 Mo. 428, 435, 48 S.W. 851, 853 (1898). The Supreme Court of California has held that certain provisions of the California Constitution "combine[d] with the equal protection clause of the federal Constitution to proscribe local taxes which operate to unfairly discriminate against intercity businesses by subjecting such businesses to a measure of taxation which is not fairly apportioned to the quantum of business actually done in the taxing jurisdiction." *City of Los Angeles v. Shell Oil Company*, 4 Cal.3d 108, 93 Cal.Rptr. 1, 11, 480 P.2d 953, 963 (1971).

In short, there is considerable authority to support the proposition that a municipal corporation may never tax that portion of a taxpayer's receipts which are directly derived from sales made outside its geographical limits.

We need not, and do not, adopt this proposition at this time. It is enough to say that the validity of the Public Mass Transportation Tax and Transportation Sales Tax statutes, if interpreted to permit the taxing of receipts directly derived from sales made outside the geographical limits of a city, would at least be a matter of grave doubt, and that a construction of such statutes should be adopted which would give validity to the statutes rather than one which would render them void or at least of doubtful validity.

■ The question then narrows to whether "place of business" as used in § 92.408(5) and § 94.620(5), refers, *in this case*, to a location inside or outside the limits of Kansas City. We hold that "place of business" refers to the place where the trucks are parked, the wares are displayed, the initial orders are taken and filled, payments therefor are made, and the sales are thereby consummated. In this case, a tax may not be imposed under the statutes on those gross receipts at issue here.

Respondent relies on the case of *Fabick and Company v. Schaffner*, 492 S.W.2d 737 (Mo. 1973). We decline to overrule *Fabick* at this time. It is enough to say that in *Fabick* the sales were not, as in this case, initiated *and* consummated outside the limits of Jefferson City.

The judgment is reversed and the cause remanded.

MORGAN, C. J., RENDLEN, J., and SIMEONE, Special Judge, concur.

SEILER, J., concurs in part and dissents in part in separate opinion filed.

BARDGETT and FINCH, JJ., concur in part and dissent in part and concur with separate opinion of SEILER, J.

SEILER, Judge, concurring in part and dissenting in part.

I must respectfully disagree with the conclusion expressed in the majority opinion that Kansas City cannot validly tax taxpayer's receipts directly derived from sales made outside Kansas City.[1]

The majority concludes that "place of business" refers to the location of the trucks in order to avoid the constitutional question whether the tax would be valid if "place of business" were construed to mean Kansas City. For the reasons discussed below, I believe "place of business" refers to the appellant's location in Kansas City and that the statute is valid under this interpretation.

Sections 92.400–.421, RSMo Supp. 1971, and §§ 94.600–.655, RSMo Supp. 1973, in provisions quoted by the majority, state that all retail sales shall be deemed to be consummated at the place of business of the retailer if out of state delivery is not involved. If there is more than one place of business, that at which the initial order is taken shall be deemed the place at which the sale is consummated. However, "[a] sale by a retailer's agent or employee shall be deemed to be consummated at the place of business from which he works." §§ 92.-

1. As we understand the facts, no Kansas sales are involved. The receipts in question come from sales made in Missouri, relatively nearby but outside the city limits of Kansas City.

408(5); 94.620(5). The statute thus contemplates that the location of the actual passage of title shall not be determinative in locating the place where the sale was consummated. Rather, as interpreted in *Fabick and Co. v. Schaffner*, 492 S.W.2d 737 (Mo. 1973), "[t]he obvious purpose of this provision was to fix the taxable situs of transactions which might have a nexus with more than one municipality. A staggering administrative problem would be created if each sale were subjected to scrutiny as to the exact point of passage of title. The General Assembly intended to avoid such difficulty by determining in advance the situs of the taxable event." *Id.* at 745.

It would defeat the clear legislative intent to hold that each truck was a "place of business" and thus the taxable situs of the transaction, for the situs would then not be fixed, but would vary with the movement of the truck. The use of the term "place of business" indicates intent to use a fixed place as the situs of the tax. A travelling salesman makes each sale at "a place"—he negotiates the sale, papers are signed if necessary, orders are taken and filled and payments made. Yet it would not be supposed that the car the salesman drives, or the stoop on which he stands, is the "place of business from which he works." The mobile trucks are no different except that they make a number of sales at each stop— much the same as a salesman might at a large apartment building. The purpose of the legislature in enacting the provisions in question indicates that they should not be construed to mean that the trucks are "places of business." The cases cited by appellant are distinguishable. In those cases the "place of business", while not the central office, was a permanent location, nor were administrative problems present there such as we have here.[2]

The Mobil-Teria Catering Co. office in Kansas City is the headquarters and permanent location of its business. This is where the commissary, kitchen, and garage are located and presumably where the sandwiches and coffee are prepared. This is also where the vending trucks come from and return each day, where inventory is loaded and unloaded and stored, where all central bookkeeping is done, where support personnel are located, and where the driver returns the money collected each day and from which he receives his paycheck. As such, it is clearly a place of business of Mobil-Teria, and under these facts, is the only place of business from which its agents, the truck drivers, may be said to work.

The majority opinion intimates that if the statutes were construed to permit taxation of the sales physically occurring outside Kansas City, they would be unconstitutional, citing cases which hold that a municipality has no authority to exercise any control over territories beyond its limits. Of course, Kansas City may not tax an activity with which it has no nexus, but it does not seek to do so here. It seeks, pursuant to authority granted by state statute, to impose a tax upon persons in Kansas City who are engaged in the selling of tangible personal property subject to sales tax, for the privilege of engaging in the business of selling such tangible personal property. Thus what is imposed is not a sales tax *per se*, but a gross receipts tax, *see Fabick and Co.*, 492 S.W.2d at 744 (Mo. 1973) , on the business of selling. Appellants do not deny this. As this court said in *Fabick, id.* at 744:

"No constitutional inhibition has been cited which prevents the General Assembly from selecting, for the purpose of a tax of such [a] nature, the place of business of the seller as the situs of the transac-

2. Appellants insist there are no administrative problems so far as its operation is concerned, that it maintains records from which it can readily be determined which sales are within and which without the corporate limits of Kansas City. We are not so sure about this, based on our examination of the exhibits. In any event, we have held that the presumption as to

the situs of the taxable event is irrebuttable, *Fabick and Co.*, 492 S.W.2d at 745, and it does not follow that the legislative desire to avoid administrative problems generally by the method it adopted is flawed or not within its legislative judgment, even if appellant's records are quite clear.

tion to be included in arriving at the basis for levy of the tax. Jurisdictional arguments based upon lack of reciprocal benefit are unavailing because the retailer is within the city imposing the tax and is the recipient of governmental services provided by the city. *Kansas City v. Graybar Electric Company, Inc.* 485 S.W.2d 38 (Mo. banc 1972)."

Additionally, the cases cited by the majority simply invalidate ordinances passed by cities without specific legislative authority. One specifically states that a municipal corporation cannot exercise power outside its boundaries absent specific legislative enactment or other lawful authority because "the city, which is but a creature or political subdivision of the state, possesses only those powers which have been either expressly or by necessary implication conferred upon it, . . ." *City of St. Louis v. Lee*, 132 S.W.2d 1055, 1057 (Mo.App. 1939). It should here be noted that Kansas City is a constitutional charter city, and as such has all the

> "powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law."

Mo. Const. art. VI, § 19(a).

Sections 92.400–.421 and 94.600–.655 expressly confer on Kansas City the power to tax a seller of tangible personal property at his place of business. Thus, since we have concluded that in this case the place of business is Kansas City, no obstacle exists to Kansas City's right to tax appellants unless it be a constitutional one.

The majority cites a California case, *City of Los Angeles v. Shell Oil Co.*, 4 Cal.3d 108, 93 Cal.Rptr. 1, 11, 480 P.2d 953, 963 (1971), as authority that "local taxes which operate to unfairly discriminate against intercity businesses by subjecting such businesses to a measure of taxation which is not fairly apportioned to the quantum of business ac-

tually done in the taxing jurisdiction" are proscribed by a combination of the federal equal protection clause and various provisions of the California constitution, particularly those which prohibit extraterritorial application of the laws and guarantee equal protection of the laws. However, the key to the invocation of these constitutional provisions is "local taxes which operate to unfairly discriminate against intercity businesses." Such discrimination would subject the business to the risk of multiple taxation and as such would burden unfairly those engaged in intercity commerce much as inappropriate taxation by one state of activities partly carried out in another is prohibited by the commerce clause in order to prevent multiple taxation and disproportionate taxation by any one state. *See id.*, 93 Cal. Rptr. 1, 480 P.2d at 959.

However, there is no discriminatory impact on intercity businesses in this state. If, under the provisions of the statute, a retail sale such as is involved in this case is determined to take place in Kansas City, then no other locality could tax it. This is not a situation where some other city or town, for instance, could say a particular activity meant that the sale was consummated there, while Kansas City, Missouri was saying that the same activity meant it was consummated in Kansas City, so that a company would therefore be subject to taxes twice. The provisions of Sections 92.-400–.421 and 94.600–.655 govern all of Missouri. If "place of business" is determined to mean a permanent place of business, no locality can decide that for it the phrase will mean something else. Unlike interstate commerce, in which different states could give different interpretations to a phrase and, absent federal intervention or legislation, multiple taxation could result, within Missouri "place of business" as used in this statute, once defined, will remain so defined. If a later case changes the definition then the companies affected will pay only according to the changed definition. Thus, no unconstitutional discrimination is present. An intercity business located in any city where the transportation sales tax

is in effect will pay the tax only once, just as a business operating wholly within such a city will do.

Finally, *Shell Oil* indicates that if a tax is based on selling activities, then it can only be based on that portion of the selling activities which took place in the city imposing the tax. I disagree. Where the purpose of the tax is to tax the privilege of engaging in the business of selling, and each sale made is made as a result of the activities which occur in Kansas City, then each sale had a nexus to Kansas City and the number of sales is a proper factor to use to determine the basis upon which the tax on the privilege of doing business shall be measured. *See Kansas City v. Graybar Electric Co.,* 485 S.W.2d at 41; *Food Center of St. Louis v. Village of Warson Woods,* 277 S.W.2d 573, 578–79 (Mo. 1955).

Additionally, since all sales are "deemed" consummated at the place of business, all of the sales and activities are deemed to have occurred at one place. There is thus no portion of the sales activities which can be deemed to have occurred elsewhere and so no portion of the sales activities can be taxed elsewhere under the statute in question. This case is thus unlike *Food Center of St. Louis,* because there the statutory definition of merchant was sufficiently broad to permit varying subdefinitions of merchant in different localities. Two municipalities sought to tax plaintiff as a merchant operating within their boundaries. This court held that both municipalities' ordinances were within applicable statutes and that it was permissible for one locality to tax on the business of selling because the administrative aspects of the sale occurred there, and the second to tax on the basis that the taxpayer was a merchant because the actual sales occurred there.[3] Here the definition of "place of business" is in the statute and, as interpreted by this court, that definition will control in all municipalities.

This is not a case in which the legislature has impermissibly sought to tax persons or property outside its jurisdiction. In such a case, the mere location of offices and officials in Missouri would not permit it to tax the property outside the state. *St. Louis v. The Ferry Co.,* 78 U.S. 423, 430–31, (11 Wall.), 20 L.Ed. 192 (1870). In the instant case, all the property was located within Missouri.

"It has been said that the power of taxation for the purposes of the commonwealth is a part of all governmental sovereignty and is inseparable from it. It is for the legislature to decide what persons and property shall be reached by the exercise of this function and in what proportions and by what processes and instrumentalities taxes shall be assessed and collected. The authority extends over all persons and property within the sphere of its territorial jurisdiction. When called into activity there can be no limit to the degree of its exercise except what is found in the wisdom of the lawmaking power and the operation of those conservative principles which lie at the foundation of all free government."

*Ferry Co.* at 429.

I would hold that where it is unclear what could constitute "selling activities" sufficient to form the basis for a tax on the business of selling it is appropriate for the legislature to set up a scheme for determining at what location the sale will be deemed to have occurred, thus permitting political subdivisions of the state to know what revenues to expect and how to assess them. *Cf. City of Dallas v. Texas Prudential Ins. Co.,* 156 Tex. 36, 291 S.W.2d 693, 695–96 (1956) (legislature can fix situs of personal property for purposes of taxation). Such is in keeping with our state constitution, which states:

"The taxing power may be exercised by the general assembly for state purposes, and by counties and other political subdi-

3. *Food Center* was not questioned in any aspect relevant to this case in *May Dept. Stores Co. v. University City,* 458 S.W.2d 260 (Mo. 1970). That case simply overruled the interpretation given the ordinance in *Food Center* to the extent that it conflicted with the decision in *May Dept. Stores.* 458 S.W.2d at 262.

visions under power granted to them by the general assembly for county, municipal and other corporate purposes."

Mo. Const. art. X, § 1.

While believing the statute is constitutional, as stated above, I concur in the result reached by the majority of reversing and remanding the case, by reason of a second issue raised by appellant, which the majority opinion did not need to reach in its proposed disposition. As the majority notes, Kansas City imposed a tax pursuant to §§ 92.400–.421, RSMo Supp. 1971, under the authority of ordinance No. 42073. However, effective October 1, 1973, ordinance No. 42073 was repealed and replaced by ordinance No. 43171. The latter ordinance imposed a tax pursuant to §§ 94.-600–.655, RSMo Supp. 1973. Both statutes, and the ordinances promulgated under them, imposed a tax on the same activities.

The appellant was assessed for the period April through November 1973 and January through July 1974 pursuant only to the authority of §§ 92.400–.421. Such assessment was clearly proper as to the period April through September 30, 1973, during which time ordinance No. 42073 was in effect. However, notice of assessment was not valid as to the periods October 1 through November 30, 1973 and January 1 through July 31, 1974 because during those periods the Kansas City ordinance permitting taxation under Chapter 92, ordinance No. 42073, had been repealed, yet it was under Chapter 92 that the department of revenue informed appellant it was to be taxed.

Respondent argues that the assessment was merely misstyled, that appellant knew what tax was sought to be imposed, and that appellant was not prejudiced by the "technical" error, but, in my opinion, the error cannot be labeled a mere misstyling. As required by § 144.210, RSMo 1969, appellant received notice that it would be taxed under Chapter 92, RSMo Supp. 1971. Respondent now seeks to have this court decide that since it meant to tax partly under that statute and partly under Chapter 94, RSMo Supp. 1973, we should so treat the assessment made since the substantive challenges to taxation under both statutes would be the same. That is not the point. The appellant received no notice of an assessment under Chapter 94. It was improperly assessed under Chapter 92. An identity of substantive issues cannot give the director of revenue authority to tax under a statute which had no application to Kansas City at the time of the activity in question.

Whether appellant can now be properly reassessed under Chapter 94 for the sales made outside Kansas City for the October 1, 1973—July 31, 1974 period cannot now be determined. Appellant asserts that it has not received proper notice of any additional assessment as required by § 144.210, RSMo 1969, and inferentially that the statute of limitations of § 144.220, RSMo 1969, now prevents the respondent from reassessing it. The hearing officer and the circuit court concluded that appellant had failed or neglected to file a return as to these sales and thus that the two year statute of limitations for additional assessment under § 144.220 does not apply and appellant could presently be assessed for the taxes in question.

The record does not contain a copy of the tax returns of appellant for the period in question and we would thus be unable to determine what, if any, returns it did file with the department of revenue for that period, or whether it falls within the exceptions to the statute of limitations contained in § 144.220. A determination of this issue must therefore await some future attempt, if so advised, by the department of revenue to assess appellant, after remand, under Chapter 94.