SHELL OIL COMPANY, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. 68871.

Supreme Court of Missouri, En Banc.

June 16, 1987.

Rehearing Denied July 14, 1987.

Richard L. Schnake, David C. Agee, Springfield, for appellant.

William L. Webster, Atty. Gen., Melodie Powell, Asst. Atty. Gen., Jefferson City, for respondent.

**180**

BILLINGS, Judge.

Shell Oil Company appeals the decision of the Administrative Hearing Commission, which upheld the assessment against petitioner of St. Louis County sales and transportation sales taxes by respondent Director of Revenue. Initially appellant sought review in the Missouri Court of Appeals, Western District. Because the case requires construction of the revenue laws of this state, that Court transferred the cause without opinion to this Court which has exclusive jurisdiction under Mo. Const. art. V, § 3. Affirmed.

The central issue is whether the Director's assessment should be set aside because Shell's sales of aviation fuel at the Lambert airport in St. Louis County are in some way exempt from county sales and transportation sales taxes. Shell's principal contention is that its sales are exempt because it does not maintain a place of business in St. Louis County.

The Director collects, administers, and enforces the various sales tax provisions including properly enacted county sales taxes. Sections 66.610 (authorizing the Director to collect county sales tax) and 94.-615, RSMo 1986 (the same as to the county transportation sales tax). The Director assessed Shell for both St. Louis County sales taxes and interest in the total amount of $103,009.53 for the period from March 1, 1978 through February 28, 1981. As permitted under § 621.050, RSMo 1986, Shell appealed the assessment to the Commission. The parties waived a formal hearing and submitted a joint stipulation of facts as well as separate proposed findings of fact, conclusions of law and briefs. The Commission upheld the Director's assessment of the county sales taxes on Shell's sales of aviation fuel at Lambert Airport.

■ Upon review, the commission's decision "shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record." Section 621.193, RSMo 1986. The Commission must observe mandatory procedural safeguards and its approval of the questioned agency action must not clearly create a result "contrary to ... the reasonable expectations of the general assembly...." *Id.* As in the review of other administrative decisions, the evidence must be considered in a light most favorable to the decision, together with all reasonable inferences which support it. *See Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888, 894 (Mo. banc 1978). A summary of those facts which support the decision follows:

Shell, a Delaware corporation with its principal office in Houston, Texas, markets petroleum products, including aviation fuel, nationwide. At its Houston offices, Shell has entered into contracts for the sale of aviation fuel to several airlines which operate from Lambert-St. Louis International Airport (Lambert Field) within St. Louis County. These contracts include an estimated gallonage of fuel to be sold to each airline. Shell does not itself own or operate a pipeline, fuel storage facility, or pump at Lambert. Instead, Shell has certain fuel exchange agreements with Amoco Oil Company which allows Shell to fulfill its aviation fuel contracts there. From its Illinois refinery, Amoco delivers fuel to Lambert through a pipeline owned by St. Louis Pipeline Company but operated by yet another entity, Amoco Pipeline Company. Shell has no equity interest in Amoco, St. Louis Pipeline or Amoco Pipeline.

At Lambert Field the fuel passes through a meter owned by Amoco into the storage tanks of Allied Aviation Fueling Company of St. Louis, Inc. Allied employees determine when and how much fuel will be delivered through the pipeline as well as which airline will receive delivery of the fuel. Allied employees measure the quantity of fuel received by "reading" the Amoco meter. Allied delivers a meter ticket reflecting this measurement to each airline customer and sends a copy of the meter ticket to Shell's administrative office in Oak Brook, Illinois, for billing. Allied fully controls the commencement and termination of deliveries through the pipeline and is compensated for its service by the airlines it serves. Shell neither pays Allied nor has any equity interest in or contract with Allied.

Shell's contracts with the airlines and the exchange agreements with Amoco provide that title to the aviation fuel passes from Amoco to Shell and then to the respective airlines as it passes through the Amoco meter at Lambert. Another stipulation states that "Shell has paid and no controversy exists with respect to State sales or use taxes on the sales in question, ..." Despite the parties' failure to specify whether a state sales or state use tax was paid, the Commission concluded that Shell had paid state sales tax on the sales of aviation fuel because taxable sales had taken place in Missouri.

■ Shell argues that in order to be subject to these taxes it must be operating a "place of business" in St. Louis County. In this, Shell misreads the statutes and focuses improperly on a secondary question. The county sales tax imposes upon all sellers "a tax for the privilege of engaging in the business of selling tangible personal property ... at retail to the extent and in the manner provided in [the State Sales Tax Act] and the rules and regulations of the director of revenue issued pursuant thereto; ..." Section 66.605, RSMo 1986. Similarly, the transportation sales tax is imposed "on the receipts from the sale at retail of all tangible personal property or taxable services at retail within the [county] ..., if such property and services are subject to taxation by the State of Missouri under the [State Sales Tax Act]." Section 94.605.2, RSMo 1986. Therefore, the threshold question is whether any transaction constitutes a sale at retail as defined in Section 144.010, RSMo 1986. This statute has been slightly altered since this case arose but is unchanged in any significant or relevant respect. If and only if the transaction is subject to state sales tax may the county sales taxes apply.

■ A sale at retail is defined as "any transfer made by any person ... of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration; ...." Section 144.010(8). The attribute then which is determinative

of whether a transaction is a taxable sale for purpose of the Missouri sales tax is the transfer of title or ownership. *Kurtz Concrete, Inc. v. Spradling*, 560 S.W.2d 858, 860 (Mo. banc 1978). Transfer of "[t]itle to goods cannot pass under a contract for sale prior to their identification to the contract...." Section 400.2–401(1) (the Uniform Commercial Code). Subsection 2 continues:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, ... (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but (b) if the contract requires delivery at destination, title passes on tender there."

■ The stipulated facts do not detail Shell's exchange agreement with Amoco or its contracts with the airlines except for one salient fact. Title passes at the Amoco meter from Amoco to Shell and then to the airlines. Consequently, Shell's denial of ownership or control of the pipeline or any airport operation is unavailing as to the controlling question of whether this constitutes a sale. For purpose of the state taxing statutes, there is a sale at retail even, as here, if its consummation is only effected through a series of agency relationships.

Most of Shell's argument about a "place of business" is misdirected. Although the sales tax statues, *see* §§ 66.615.5 and 94.-620, RSMo 1986 (using identical language) and the regulations of the Director, *see* 12 CSR 10–5.545 and 10–5.050, provide that "all retail sales shall be deemed to be consummated at the place of business of the retailer," the purpose of that statutory presumption is not implicated. "The obvious purpose of this provision was to fix the taxable situs of transactions which might have a nexus with more than one municipality." *Fabick and Company v. Schaffner*, 492 S.W.2d 737, 745 (Mo. banc 1973). Both of the statutes in question emphasize

this purpose by additionally providing that when a retailer has more than one place of business in Missouri a sale is deemed to be consummated where the initial order is taken. No such choice is necessary here. These sales are entirely consummated in St. Louis County where, Shell, through its agents, delivers the aviation fuel, and passes title to the purchasers and ultimate users, the airlines with whom it has contracted.

Shell relies on *Mobil-Teria Catering Company, Inc. v. Spradling,* 576 S.W.2d 282 (Mo. banc 1978) in its argument but that case is distinguishable. In *Mobil-Teria,* the dispute was whether the questioned sales occurred in the context of a place of business inside or outside the limits of Kansas City, the taxing jurisdiction. *Id.* at 284. In that case, all indicia of the questioned sales occurred outside Kansas City. While possibly subject to taxation by other local jurisdictions, the extraterritorial sales therefore could not be subject to Kansas City's local sales taxes. *Id.* This conflict is not presented in the instant case since all significant aspects of the sales occur at Lambert Field which is entirely subject to the taxing jurisdiction, St. Louis County.

Citing *Oates v. Safeco Insurance Company of America,* 583 S.W.2d 713 (Mo. banc 1979), Shell next contends that previous litigation on nearly identical facts should support a collateral estoppel against the Director. In a circuit court case, the same metering device considered here was the focus of "a place of business" discussion. In another, the petitioner, *Texaco, Inc.,* had an arrangement virtually identical to the one that Shell has in the instant case except that the aviation fuel was delivered at Kansas City Mid-Continent Airport through an intermediary's pipeline crossing from Kansas to Missouri. The Director of Revenue entered into a joint order of dismissal with the petitioner in that case which abandoned the Director's assessment. These cases are substantially similar on their facts to the present case.

Shell points to *Drainage District No. 1 Reformed v. Matthews,* 361 Mo. 286, 234 S.W.2d 567 (1950) in support of its contention that a governmental entity can be bound by collateral estoppel. However, the *Matthews* court grounded its holding on the doctrine of virtual representation and found that the parties to the two suits were essentially identical. *See id.* at 303–04, 234 S.W.2d at 574. Still, Shell argues that the test wherein a stranger to a prior suit may benefit from the use of collateral estoppel against a party to the former suit has been met. *See Oates,* 583 S.W.2d at 719 (setting out a four-part test).

Nonetheless, this Court must decline the requested application of estoppel. The circuit court case and the joint order of dismissal before the Commission do not bind this Court. Importantly, the "incidence of taxation is determined by law" and the Director may not "vary the force of statutes." *Lynn v. Director of Revenue,* 689 S.W.2d 45, 49 (Mo. banc 1985); *St. Louis Country Club v. Administrative Hearing Commission,* 657 S.W.2d 614, 616 (Mo. banc 1983). The Director's previous acts whether declining to appeal an adverse decision or whether consenting to an adverse dismissal order "cannot bind future directors of the Department nor limit the state's right to collect taxes properly owing." *Lynn,* 689 S.W.2d at 49. Sound policy suggests that estoppel should rarely be applied to a governmental entity and then only to avoid a manifest injustice. *Cf. id.* at 48 (discussing why equitable estoppel should not apply against the Director). Moreover, "a change of position with respect to a pure matter of law ordinarily will not work an estoppel, particularly when the earlier position has been found unsound or untenable." *Kansas City v. Martin,* 391 S.W.2d 608, 616 (Mo.App.1965). The Director's prior positions whether by judgment or consent may not form the basis of an estoppel against him.

Shell correctly asserts that only sales subject to the state sales tax are subject to the county sales taxes. However, it incorrectly argues that its sales are exempt because Section 144.030.1 exempts from application of the sales tax "such sales as may be made in commerce be-

tween this state and any other state of the United States." A tax exemption provision is to be construed strictly against the party who claims the exemption. *Farm & Home Savings Association v. Spradling,* 538 S.W.2d 313, 317 (Mo.1976). Based on the foregoing, Shell maintains a place of business, albeit through its agents, in St. Louis County. At this location, sales are initiated and consummated. It is the delivery of the aviation fuel which triggers Shell's right to payment, and triggers the airlines' duty to pay. The contract signed in Houston is no more than an agreement regarding such future sales. Shell has not demonstrated its right to this exemption.

 Finally, citing *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), *reh'g. denied,* 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371, Shell raises a commerce clause argument. Section 144.030.1 exempts from sales tax "any retail sale which the state of Missouri is prohibited from taxing under the Constitution or law of the United States of America." Consistent with its own view of the facts, Shell argues that the local sales taxes fail to meet the four-part test for determining whether local taxation of interstate sales impermissibly burdens interstate commerce. *Complete Auto Transit, Inc.,* 430 U.S. at 279, 97 S.Ct. at 1079.

Since this Court has found the sale to be intrastate in character, this challenge evaporates. The interstate character of Shell and its far-flung corporate activities do not themselves "present an insuperable barrier to local regulation nor impose an undue burden upon interstate commerce." *See Lynn,* 689 S.W.2d at 47. When there is a substantial nexus with the taxing state, the Commerce Clause does not absolutely forbid local regulation of interstate commerce. *Id.* Shell's assertion that the sale and Shell itself have no nexus with St. Louis County runs counter to the facts. The sale themselves are inextricably linked to St. Louis County. Through its agent, Shell maintains a continuing presence at Lambert Field by which it fulfills its contracts with airlines which operate there. Shell's sales are subject to the Missouri state sales tax and consequently they are subject to the county sales taxes which incorporate the statutory limitations of the state sales tax. Shell's equal protection argument fails for similar reasons.

The Administrative Hearing Commission decision is supported by competent and substantial evidence and is affirmed.

HIGGINS, C.J., and BLACKMAR and RENDLEN, JJ., concur.

DONNELLY, J., dissents in separate opinion filed.

WELLIVER and ROBERTSON, JJ., dissent and concur in dissenting opinion of DONNELLY, J.

DONNELLY, Judge, dissenting.

As a general rule, St. Louis County is permitted to impose a sales tax and a transportation sales tax within the parameters of the state sales tax law. *See,* Sections 66.605 and 94.605.2, RSMo 1986. Implicit in these provisions is a requirement that there be a sale at retail. In addition, it is presumed that all such retail sales will "be consummated at the place of business of the retailer." Sections 66.615.5 and 94.620.5, RSMo 1986. The statutes are silent as to the meaning of the term "place of business." For purposes of determining the situs of the taxable sale, the question then is whether Shell Oil Company's "place of business" is in Houston, Texas, or at the meter site located at Lambert Airport.

The Director of Revenue urges that Shell Oil Company's "place of business" is at the location of the meter site where fuel passes from the pipeline into storage facilities at Lambert Airport. This assertion is based primarily on the stipulated fact that title to the fuel passes at this meter site.

I must disagree. This Court has held that the point of delivery or point of passage of title is irrelevant in determining where a "place of business" is located. *Fabick & Co. v. Schaffner,* 492 S.W.2d 737 (Mo.1973). In *Fabick,* a seller of heavy equipment sought a declaratory judgment that sought to preclude imposition of the

Jefferson City municipal sales tax to its business transactions. Fabick's salesmen solicited sales of the equipment from customers both within and outside Jefferson City. The sales purchase orders were then accepted by Fabick at its office in Jefferson City. Upon approval of the sales, the equipment was delivered to its customers by Fabick: (1) from its office in Jefferson City to another point in Missouri; or (2) from a point outside of Jefferson City to another point in Missouri; or (3) from outside of Missouri to a point in Missouri, either within or beyond the limits of Jefferson City. *Id.* at 739.

In upholding the assessment of the sales tax to all of the transactions, with the exception of those to out-of-state customers, this Court explained that:

> The obvious purpose of [the "place of business"] provision was to fix the taxable situs of transactions which might have a nexus with more than one municipality. A staggering administrative problem would be created if each sale were subjected to scrutiny as to the exact point of passage of title. The General Assembly intended to avoid such difficulty by determining in advance the situs of the taxable event.

*Id.* at 745. Although *Fabick* is factually distinguishable from the present case, the concept that the location of passage of title is irrelevant remains a viable principle. It serves to ease administration of both *intra*state and *inter*state state commerce transactions.

Further support for this interpretation is found in the Director's own regulations. *See,* 12 CSR 10–5.050 and 10–5.545. It is stated therein that for purposes of both the sales tax and transportation sales tax, "all retail sales are conclusively presumed to have been consummated at the place of business of the seller/retailer without regard to the location or point of passage of title. . . . The sale is consummated at the seller's location, not at the point of delivery."

An example of the rule's application is regard to deliveries from outside of the State of Missouri is found in 12 CSR 10–5.-070(1)(B). It reads as follows:

> Example: Ms. Stone, a Mo. purchaser located in Sun City, has a mail order catalog from Rock Company, a vendor located outside the state of Mo., with no office, property or salesmen in Mo. Ms. Stone sends an order in the mail to Rock Company for merchandise to be delivered to her place of business by common carrier. Ms. Stone is subject to the Mo. use tax if the merchandise is for storage, use or consumption. The sale is not subject to city sales tax.[1]

Here, the airlines have contracted to purchase fuel from Shell Oil Company, a supplier located in Houston, Texas with no office, property or salesmen in Missouri. The purchase arrangement includes an estimated annual gallonage to be sold. As a part of an "exchange agreement" between Shell Oil Company and Amoco Oil Company, the fuel is delivered via a pipeline and metering equipment owned and/or operated by Amoco Oil Company from an Illinois refinery to the purchasers at their places of business in St. Louis. In my view, the sale is not subject either to a local sales tax or to a transportation sales tax.

These facts also give rise to a legitimate claim that imposition of such taxes creates an unconstitutional burden upon interstate commerce. Under the *Complete Auto Transit*[2] test, a tax can only be sustained against a Commerce Clause challenge if the tax is assessed on an activity with a "substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Id.* at 276, 97 S.Ct. at 1079.

The parties have stipulated that:

> Shell maintains no sales office, administrative office, store, warehouse or other similar facility at the Airport, or anywhere else in the State of Missouri, which in any way participates in the sale

---

**1.** An identical example is found in 12 CSR 10–5.-560(1)(B) for applying the transportation sales tax. It concludes that "[t]he sale is not subject to transportation sales tax."

**2.** *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).

or delivery of the aviation fuel in question to the respective airlines at the Airport.

In addition, the fuel orders are placed by the airlines through their agent, Allied Aviation, directly to the Amoco refinery in Illinois pursuant to the sales contracts entered into between Shell and the airlines in Houston, Texas. The fuel is then delivered by means of a pipeline between two meter sites which are located in different states. The fuel is thus measured when it enters the pipeline at Wood River, Illinois, and when it leaves the pipeline for storage in tanks at Lambert Airport. None of the described equipment or facilities are owned or operated by Shell Oil Company.

There is an apparent lack of a substantial connection with Missouri on the facts in this case. They fail to satisfy the nexus test of *Complete Auto Transit. See, e.g., National Bellas Hess, Inc. v. Dept. of Revenue,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967) (cannot impose state use tax on out-of-state seller when only connection with customers in taxing jurisdiction is delivery of the goods by common carrier or the United States mail); *Miller Bros. Co. v. State of Maryland,* 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954) (Delaware corporation cannot be burdened with Maryland use tax where its only connection with Maryland customers was delivery of the goods and general advertising in Maryland); and *Norton Co. v. Dept. of Revenue,* 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951) (Illinois gross receipts tax sustained on Massachusetts corporation with office in Illinois as to all sales to Illinois customers except on those orders sent directly to and delivered from the head office in Massachusetts).

The Administrative Hearing Commission's decision is not supported by competent and substantial evidence of a taxable event, and consequently creates an unconstitutional burden on interstate commerce.

I respectfully dissent.