The **BOARD OF EDUCATION OF the CITY OF ST. LOUIS, Appellant,**

v.

The **CITY OF ST. LOUIS, et al., Respondents.**

No. 76025.

Supreme Court of Missouri, En Banc.

June 21, 1994.

Rehearing Denied Aug. 15, 1994.

Kenneth C. Brostron, Sandra A. Padgett, Stuart J. Vogelsmeier, St. Louis, for appellant.

James W. Erwin, Lisa C. Toarmina, St. Louis, for respondents.

LIMBAUGH, Judge.

Plaintiff, the St. Louis Board of Education (Board) seeks a declaratory judgment that tax relief granted by defendant City of St. Louis (City)[1] in favor of defendant Gateway Hotel Holdings, Inc., (Gateway) is unconstitutional. More particularly, the Board, a recipient of the tax proceeds that would have been collected on the Gateway property, claims that the tax relief exceeds a twenty-five year limitation imposed by Article X, Section 7, of the Missouri Constitution. The Circuit Court of the City of St. Louis granted Gateway's motion for summary judgment, and the Board appealed directly to this Court. This Court has jurisdiction because it is asked to invalidate §§ 99.700 to 99.715, RSMo 1986, the statutes on which the tax relief is based, to the extent that they authorize tax relief that exceeds the twenty-five year limitation. Mo. Const. art. V, § 3. The judgment is affirmed.

The property in question, now known as the Regal Riverfront Hotel, was built as part of the Downtown Sports Stadium Redevelopment Plan approved in 1961 in a series of ordinances passed by the St. Louis Board of Aldermen. These ordinances also declared that the property subject to the redevelopment plan was "blighted" and, therefore, qualified for a twenty-five year period of tax relief as authorized under § 353.110, RSMo 1959. In April 1992, prior to the expiration of the twenty-five year period of tax relief on December 31, 1992, the Board of Aldermen enacted Ordinance 62549, which declared that the hotel property had again become "blighted." This new ordinance, authorized under §§ 99.700 to 99.715, RSMo 1986, rather than § 353.110, RSMo 1986, purported to entitle the hotel property to an additional ten years of partial tax relief. The tax relief under this new ordinance is the subject of the Board's challenge.

■ As a threshold issue, the Board contends that the City is collaterally estopped from granting tax relief on the hotel property because of a 1979 circuit court decree to which the City consented. The "Judgment" portion of the decree states in pertinent part: "It is further ORDERED, ADJUDGED and DECREED that the real properties herein [including the hotel property] shall not be entitled for the year 1993 and thereafter to any tax relief either by way of partial tax relief pursuant to Chapter 353, R.S.Mo., 1969 or by exemption." Moreover, the decree specified in its "Conclusions of Law" that "[The] property ... shall not be entitled to tax relief pursuant to Chapter 353, R.S.Mo., 1969, *or to any other form of exemption from ad valorem taxation for the year 1993 and thereafter*" (emphasis added).

---

1. The other defendants, all aligned with the City, are The Land Clearance for Redevelopment Authority of the City of St. Louis, City Tax Assessor Paul Berra, and City Tax Collector Ronald Leggett.

■ The collateral estoppel doctrine, designed to further judicial economy by avoiding continual trials on the same issue, precludes parties from relitigating issues that have been previously adjudicated. *King General Contractor v. Reorganized Church,* 821 S.W.2d 495, 500 (Mo. banc 1991). This Court has removed the requirement of mutuality between private litigants and allowed strangers to the prior suit to assert the doctrine. *Oates v. Safeco, Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979). However, the use of nonmutual offensive collateral estoppel against government entities is not permitted. *Shell Oil Co. v. Director of Revenue,* 732 S.W.2d 178, 182 (Mo. banc 1987). In this case, the Board's use of collateral estoppel is nonmutual because the Board was not a party nor in privity with a party to the prior suit. Furthermore, the Board's use of collateral estoppel is offensive because it is invoked by a plaintiff rather than a defendant. Finally, the Board asserts collateral estoppel against a government entity—the City.

As this Court stated in *Shell Oil Co.,* "sound policy suggests that estoppel should rarely be applied to a governmental entity and then only to avoid a manifest injustice." *Id.* That "sound policy" has been articulated by the United States Supreme Court, which stated, in rejecting the application of nonmutual offensive collateral estoppel against the United States government, that "government is not in a position identical to that of a private litigant," *United States v. Mendoza,* 464 U.S. 154, 159, 104 S.Ct. 568, 572, 78 L.Ed.2d 379 (1984) (*citing INS v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973)), and that "the panoply of important public issues raised in governmental litigation may quite properly lead successive administrations ... to take differing positions with respect to the resolution of a particular issue." *Mendoza,* 464 U.S. at 161, 104 S.Ct. at 573. This policy, in our view, outweighs any benefit gained from allowing third parties to offensively assert collateral estoppel against a government entity. This Court reaffirms *Shell Oil Co.,* and holds that the Board, a stranger to the original suit, may not assert collateral estoppel against the City.

■ The Board next challenges the grant of tax relief because it exceeds a constitutionally mandated twenty-five year limitation.[2] Article X, Section 7, on which the Board relies, states:

For the purpose of encouraging forestry when lands are devoted exclusively to such purpose, and the reconstruction, redevelopment, and rehabilitation of obsolete, decadent, or blighted areas, the general assembly by general law may provide for such partial relief from taxation of the lands devoted to any such purpose, and of the improvements thereon, by such method or methods, *for such period or periods of time, not exceeding twenty-five years in any instance,* and upon such terms, conditions, and restrictions as it may prescribe; provided, however, that in the case of forest lands, the limitation of twenty-five years herein described shall not apply.

(Emphasis added.)

The Board urges that the twenty-five year limitation in Article X, Section 7, is absolute and precludes any additional tax relief after the initial twenty-five years of tax relief are exhausted. In an equally valid interpretation, Gateway and the City contend that the provision does not prohibit successive grants of tax relief beyond the initial twenty-five year limitation if the property again becomes blighted. In fact, the twenty-five year limitation is ambiguous. The ambiguity arises because the clause "for such period or periods of time, not exceeding twenty-five years in any instance ..." may be read to allow either 1) multiple periods of tax relief within a single limitation of twenty-five years; or 2) multiple periods of tax relief, each subject to a twenty-five year limitation.

■ In resolving this ambiguity, we defer to the legislative power of the General Assembly. Unlike the Congress of the United

---

**2.** We decline to consider the Board's contention that *§ 353.110* contains a separate statutory twenty-five year limitation that applies to tax relief not only under that section but also under *§§ 99.700–99.715.* This issue was not raised in the pleadings nor addressed by the trial court, and it is presented only tangentially in the briefs.

States, which has only that power delegated by the United States Constitution, the legislative power of Missouri's General Assembly, under Article III, Section 1 of the Missouri Constitution, is plenary, unless, of course, it is limited by some other provision of the constitution. *Liberty Oil Co. v. Director of Revenue,* 813 S.W.2d 296, 297 (Mo. banc 1991); *Three Rivers Junior College v. Statler,* 421 S.W.2d 235, 238 (Mo. banc 1967). Any constitutional limitation, therefore, must be strictly construed in favor of the power of the General Assembly. *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160, 166 (1956). As this Court summarized in *Liberty Oil Co.:* "[d]eference due the General Assembly requires that doubt be resolved against nullifying its action if it is possible to do so by any reasonable construction of that action or by any reasonable construction of the Constitution." *Liberty Oil Co.,* 813 S.W.2d at 297. We conclude, in construing Article X, Section 7, that tax relief is not limited to twenty-five years where the property has become reblighted. Upon each new finding of blight, the General Assembly may authorize up to twenty-five years of additional tax relief.

This interpretation, according to the Board, is contrary to the intent of those who framed Article X, Section 7. Although the Board points to two exchanges during the Constitutional Convention of 1944 that support its argument, Gateway and the City offer other portions of the debates indicating that the framers were well aware that the text of the provision was ambiguous. To illustrate, a delegate to the Convention stated:

> Now of course there will be many arguments, I can think of some of them, at the end of the twenty five year period. You can induce the authorities to extend that tax exemption for another twenty-five years or less ... The ingenuity of man will make those [ambiguities] well known in due time ...

Debates of Missouri Constitutional Convention, p. 6264 (1944). The debates of the Constitutional Convention are inconclusive

and are of no avail in resolving the ambiguity.

The Board also contends that the last clause of Article X, Section 7—adopted as an amendment in 1976—is meaningless if tax relief is not limited to twenty-five years. To recapitulate, the last clause reads "... provided, however, that in the case of forest lands, the limitation of twenty-five years herein described shall not apply." The Board explains that there was no need to exempt forest lands from the twenty-five year limitation if the legislature could, in any event, have authorized tax relief for forest lands for more than twenty-five years. However, that extension of tax relief, as stated earlier, is only available when the lands become reblighted. The clause is not meaningless because it allows the legislature to authorize tax relief to blighted forest lands indefinitely without the redetermination of blight that is required for all other lands.

In sum, we hold that the tax relief granted to Gateway pursuant to §§ 99.700–99.715, RSMo 1986, does not violate the twenty-five year limitation imposed by Article X, Section 7. The judgment is affirmed.

COVINGTON, C.J., and HOLSTEIN and ROBERTSON, JJ., concur.

BENTON, J., dissents in separate opinion filed.

THOMAS and PRICE, JJ., concur in opinion of BENTON, J.

BENTON, Judge, dissenting.

The majority (1) prohibits the St. Louis Board of Education from asserting collateral estoppel;[1] (2) declines to consider the Board's argument that a statute precludes the additional tax relief St. Louis City attempted to grant; and (3) concludes that the Missouri Constitution permits perpetual tax relief for the same property.

The majority's conclusion is contrary to the consistent understanding of the constitutional provision at issue by the People of Missouri, the General Assembly, this Court, and the Attorney General. I would hold that

---

1. Because the parties did not brief the issue, this is not the case to decide the propriety of applying

nonmutual collateral estoppel against government entities.

the City's attempt to grant additional tax relief beyond 25 years is unconstitutional and would reverse the judgment below.

Article X, section 7 of the Constitution provides:

> For the purpose of encouraging forestry when lands are devoted exclusively to such purpose, and the reconstruction, redevelopment and rehabilitation of obsolete, decadent or blighted areas, the general assembly by general law may provide for such partial relief from taxation of the lands devoted to any such purpose, and of the improvements thereon, by such method or methods, for such period or periods of time, not exceeding twenty-five years in any instance, and upon such terms, conditions, and restrictions as it may prescribe....

*Mo. Const. art. X, § 7.* The key language reads: "the general assembly ... may provide for ... relief from taxation of ... lands ... and of the improvements thereon ... for such period or periods of time, not exceeding twenty-five years in any instance...." In my view, the best reading is that the phrase "in any instance...." modifies the word "lands"—not the phrase "period or periods of time."

The majority ignores the comma between the phrases, and rewrites the Constitution to read: "for such period or periods of time not exceeding twenty-five years in any instance." In fact, a comma separates the phrase "for such period or periods of time," from "not exceeding twenty-five years in any instance." The comma means that the phrase "not exceeding twenty-five years in any instance" refers to the word "lands". Section 7 thus permits a piece of land to receive one or more periods of relief, but not totaling more than 25 years.

Even more compelling than the plain language is the consistent reading of § 7 as a 25–year limit on tax relief by the People of Missouri, the General Assembly, this Court, and the Attorney General.

### I.

In a statewide election in 1976, the People amended § 7 to add a proviso after the above-quoted original § 7:

> provided, however, that in the case of forest lands, the limitation of twenty-five years herein shall not apply.

*Mo. Const. art. X, § 7.* Clearly, the People wanted to permit forest lands to receive tax relief for longer than 25 years; the constitutional amendment means that relief for more than 25 years was not already permitted. *See Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992). Thus, urban "obsolete, decadent or blighted areas" are still subject to the 25–year limitation for each plot of land.

The People adopted § 7 in the 1976 amendment with the purpose of: "the reconstruction, redevelopment, and rehabilitation of obsolete, decadent, or blighted areas." *Mo. Const. art. X, § 7.* Perpetual relief rewards failure ever to complete reconstruction, redevelopment, and rehabilitation. This Court should reject perpetual relief as inconsistent with § 7's overall purpose, as passed by the People.

### II.

The General Assembly has also consistently treated § 7 as a 25–year limit on tax relief. Section 353.110, under which the original relief was granted for 25 years, provides:

> After a period totaling not more than twenty-five years, such real property shall be subject to assessment and payment of *all* ad valorem taxes, based on the *full* true value of the real property; ....

*§ 353.110.2, RSMo 1986* (emphasis added). By requiring payment of *all* ad valorem taxes and assessment at *full* value, the plain language of § 353.110 prohibits relief beyond 25 years for the same property. *Cf. Annbar Associates v. West Side Redevelopment Corp.,* 397 S.W.2d 635, 653 (Mo. banc 1965).

Here, the City attempted to grant an additional ten-year relief under § 99.700, which permits partial tax relief upon certification by the land clearance for redevelopment authority. Section 99.700 is subject to the 25–year limit in § 353.110. Sections 99.700 and 353.110 were last amended in 1986 by House Bill 1327. *Laws of Missouri 1986,* 490. House Bill 1327, in fact, contained no provi-

sions other than the amendments to these two sections. *Id.* The General Assembly's plain language in § 353.110 thus governs § 99.700. Once a piece of property has received the full 25 years of relief under § 353.-110, further relief under § 99.700 is not available.

Even if there were some ambiguity between the differing provisions in § 353.110 and § 99.700, established rules of statutory construction would restrict § 99.700 from authorizing an additional ten-year relief. First, tax exemptions are strictly construed against the party claiming the exemption, who has the burden of proving entitlement to an exemption. *Wetterau, Inc. v. Director of Revenue,* 843 S.W.2d 365, 367 (Mo. banc 1992). Since neither § 99.700 nor § 353.110 clearly expresses any intent to permit further relief after 25 years, this Court should not construe them to permit it.

Second—and most clearly—a court has a special obligation to harmonize sections passed simultaneously and appearing next to each other in the same bill, and as the only components of that bill. *See Cascio v. Beam,* 594 S.W.2d 942, 946 (Mo. banc 1980). There is no reason to interpret the statutes to be in conflict by reading § 99.700 as additional relief after 25 years when § 353.110 requires payment of *all* taxes at *full* value.

The General Assembly certainly viewed § 7 as constituting a 25–year limit on tax relief, under § 99.700 and § 353.110 in its last enactment. The majority's contention that its interpretation defers to the General Assembly is refuted by the Assembly's express statement in its most official act: a law.

### III.

This Court has previously held that § 7 applies to the land at issue, not to a particular owner. *Annbar Associates v. West Side Development Corp.,* 397 S.W.2d 635, 653 (Mo. banc 1965). In *Annbar,* interpreting the Constitution, this Court prohibited one plot of land from receiving over 25 years of tax relief, from a change in the identity of owners. *Id.* Similarly, in this case, a change in the identity of the statute does not alter the Constitution's limit of 25 years of tax relief.

### IV.

In 1970, the Attorney General expressed the opinion that relief for more than 25 years is not permitted under § 7. *Op.Atty.Gen. No. 344, Danforth, 10–28–70.* While this Court need not accept the Attorney General's interpretation, neither should we ignore its impact. *See Mesker Brothers Industries, Inc. v. Leachman,* 529 S.W.2d 153, 158 (Mo. 1975). Even if wrong on the merits, the opinion shows that the General Assembly proposed, and the People approved, a constitutional amendment based on the understanding that the Constitution imposes a 25–year limit. *See Nicolai v. City of St. Louis,* 762 S.W.2d 423, 426 (Mo. banc 1988).

### V.

Until today's opinion, the People, the General Assembly, this Court and the Attorney General have understood § 7 as a 25–year limit on tax relief for the same property. I would follow, not abandon, this common understanding and reverse the judgment.