STATE ex rel. WASHINGTON AVENUE
REDEVELOPMENT CORP.,
Plaintiff/Appellant,

v.

CITY OF ST. LOUIS, et al.,
Defendants/Respondents.

No. 67630.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 1, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 8, 1995.

Application to Transfer Denied
Oct. 24, 1995.

Richard B. Walsh, Jr., Mary B. Schultz, St. Louis, for appellant.

Gregory R. Smith, JoAnn M. Tracy, St. Louis, Tyrone A. Taborn, James L. Matchefts, St. Louis, for respondents.

GRIMM, Judge.

This factually complex case involves three parties. The plaintiff/relator is Washington Avenue Redevelopment Corporation (WARC). WARC, an urban redevelopment corporation, was established in 1983 pursuant to The Urban Redevelopment Corporations Law, Chapter 353.*

The two defendants are the City of St. Louis (City) and The Land Clearance For Redevelopment Authority of the City of St. Louis (Authority). Authority possesses the powers granted in § 99.300 et. seq., the Land Clearance for Redevelopment Authority Law. In 1952, City approved the exercise of

* All references to chapters and sections are to RSMo 1994 unless otherwise indicated.

those powers by Authority, pursuant to § 99.330. Authority is the public agency responsible for overseeing redevelopment of blighted areas in St. Louis.

WARC sought a writ of prohibition or an injunction. It sought to preclude City and Authority from "negotiating a redevelopment or change in the use of" the former Lennox Hotel without WARC's "participation and consent." The trial court granted summary judgment in favor of City and Authority.

On appeal, WARC argues that certain agreements preclude City and Authority from changing the hotel's use from residential apartments to a commercial hotel without its participation or consent. On the other hand, City and Authority contend that WARC relinquished its control over the hotel by an amendment to the original agreements. We agree with City and Authority, and affirm.

I.

On June 29, 1971, City declared by ordinance that a certain area consisting of about sixteen city blocks was "blighted" within the meaning of Chapter 353. The Lennox Hotel is within that area.

The record does not disclose all the events that occurred between 1971 and 1984. However, it does disclose that studies were conducted and development plans were created.

On April 10, 1984, the Board of Aldermen of the City of St. Louis enacted two ordinances. In the first, the Board (1) found that the same sixteen city blocks were blighted within the meaning of § 99.320, (2) recognized the need for Authority to undertake the development of the blighted area, and (3) approved Authority's February 15, 1984 plan for the area.

Two clauses in Authority's February 15, 1984 plan are noted. First, paragraph C.1. provides: "The Authority shall be responsible for the administration of this Redevelopment Plan and fully cooperate with the Chapter 353 Developer." Next, paragraph C.2. states: "No property will be acquired by the Authority."

In the second ordinance enacted on April 10, 1984, the Board (1) found that the area continued to be a blighted area as defined in Chapter 353, (2) approved WARC's 353 redevelopment plan, which was similar to Authority's 99 plan, (3) granted WARC the power of eminent domain within the development area, and (4) authorized the Mayor and Comptroller to execute a "353 Agreement" with WARC for the redevelopment of the area.

City and WARC executed the 353 Agreement on May 18, 1984. This 353 agreement provided that WARC shall have "complete and exclusive control over the construction of the development and the management and operation of the development." Also, the 353 agreement stated that "[n]o rehabilitation or new construction of any property or structure shall be undertaken by an owner within the Development Area unless such owner shall have entered into a Parcel Development Agreement" with WARC. This section essentially prevented any property owner in the area from undertaking any reconstruction without consulting WARC.

On August 20, 1984, Authority and WARC entered into a 99 Agreement. Under this agreement, WARC was to redevelop the area in a similar manner as specified in the 353 agreement. The 353 agreement was incorporated by reference. Also, section 1.1 of the 99 agreement stated:

*Ownership:* [WARC] owns, is under contract to acquire, or under the 353 agreement has been granted the power of eminent domain to acquire all property in the Development Area.... *The Authority agrees not to acquire any property in the Development area.*

(emphasis added)

Pursuant to the agreements, the Lennox Hotel was converted into residential apartments. This project was completed in the mid–1980's. The parties dispute whether the conversion was successful. However, WARC's brief acknowledges that "Lennox Associates defaulted on the mortgage held by the United States Department of Housing and Urban Development (HUD), and HUD became mortgagee in possession."

Four years after City approved Authority's 99 redevelopment plan, Authority prepared and submitted to City an amended 99 rede-

velopment plan. On July 18, 1988, City adopted an ordinance approving an amended 99 plan.

This amended 99 plan noted that the original 99 plan "provides that the Authority *shall not acquire* any property in the Area and it is now desirable and in the public interest that said Plan be amended to provide that the Authority *may acquire* any property in the Area through exercise of eminent domain. . . ." (emphasis added). The amended 99 plan provided that Authority could purchase property in the area with the exception of certain restricted parcels. Purchase of the Lennox Hotel property was not restricted. Further, the amended plan contemplated "rehabilitation of existing structures and construction for office, retail, *hotel,* residential and parking uses." (emphasis added).

Approximately ten months after City approved Authority's amended 99 plan, WARC and Authority entered into an amendment of their 1984 redevelopment agreement. They acknowledged that their intentions had "evolved since the execution of the 99 Agreement" and they wished "to amend the same accordingly."

The amendment modified several sections, including section 1.1, quoted above. The emphasized sentence in old section 1.1 was deleted. In addition, the amendment provided:

1. *Land Acquisition*

1.1 *Ownership.* [WARC] owns, is under contract to acquire, or under the 353 Agreement has been granted the power of eminent domain to acquire all property in the Development Area. . . . The Authority may acquire, by eminent domain or otherwise, any property in the Development Area provided that such acquisition is permitted by the 99 Plan, as may be further amended or modified from time to time.

1.2 *Notice of Intent to Acquire Property.* [WARC] acknowledges that the Authority is desirous of assembling property necessary for the expansion of the A.J. Cervantes Convention Center and for development related thereto, for the benefit of the Development Area and the City as a whole. [WARC] agrees that it will not acquire any property in [the city block

containing the Lennox Hotel] without the prior written concurrence of the Authority.

1.3 *"Owner" Defined.* It is expressly understood and agreed that for purposes of this 99 Agreement, "owner" (as described in Section Six of the 353 Agreement) shall not mean the Authority, or any public body which shall be a successor, assignee, designee, or lessee thereof.

The Lennox Hotel is in a city block which adjoins the A.J. Cervantes Convention Center. In November, 1993, HUD foreclosed on the Lennox property and took title. In February, 1994, HUD transferred title to Authority. Information in the record suggests that Authority intends to change the use of the Lennox from its existing apartment use to a hotel use.

## II.

■ WARC's first two points, considered together here, allege the trial court erred in holding that City and Authority may change the use of the Lennox from residential apartments to a commercial hotel without WARC's participation or consent. WARC contends that the 353 ordinance and agreement, and the 99 plan, ordinance, and agreement, as well as the amendments thereto, forbid Authority from redeveloping the Lennox.

■ We first note that summary judgment is proper only when the moving party has demonstrated, "on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is "essentially de novo." *Id.*

Each side presents several arguments dealing with the language of the agreements and plans. After consideration, we find it necessary to address only one contention. Authority contends that even though the original plans and agreements forbid it from acquiring and developing property without WARC's consent, the 1988 and 1989 amendments gave Authority this power. We agree.

■ Redevelopment agreements are contracts, and are not essentially different from other contracts. Accordingly, they will

be measured by the same tests and will be subject to the same rights and liabilities. *Schweig v. Maryland Plaza Redevelopment Corp.*, 676 S.W.2d 249, 256–57 (Mo.App.E.D. 1984).

The original 353 agreement gave WARC "complete and exclusive control" over the construction, management, and operation of the redevelopment area. Further, it mandated that no "owner" could redevelop property without obtaining a Parcel Development Agreement from WARC.

However, in the 1989 amendment to the 99 agreement, WARC specifically gave up this right. The 1989 amendment to the 99 agreement specifically referred to the definition of "owner" contained in the 353 agreement. The amendment said " 'owner' (as described in Section Six of the 353 Agreement) shall not mean the Authority." As the restrictions in the 353 agreement apply only to "owners," Authority is no longer bound by this provision.

Next, we note that the original 99 agreement specifically forbid Authority from purchasing property in the redevelopment area. However, the 1989 amendment to the original 99 agreement specifically stated that "[t]he Authority may acquire, by eminent domain or otherwise," any property in the redevelopment area.

Further, in the 1989 amendment, WARC acknowledged that Authority desired to assemble property for expansion of the A.J. Cervantes Convention Center. To assist Authority in carrying out that desire, WARC agreed that it would not acquire certain property, including the Lennox Hotel, without Authority's prior agreement. Thus, after the 1989 amendment to the original 99 agreement, no agreement between WARC and Authority prohibited Authority from redeveloping the Lennox.

Finally, we look to the original 99 plan Authority submitted to the Board of Aldermen, as well as the 1988 amendment. The original 99 plan authorized Authority to contract with private developers to carry out the provisions of the plan. Also, it forbid Authority from acquiring property in the redevelopment area.

However, the 1988 amendment to the 99 plan specifically stated that "Authority may acquire any properties in the Area." Authority could now acquire property in the area with the exception of specified parcels. The Lennox is not in one of the specified parcels.

The original plans and agreements apparently prevented Authority from owning and redeveloping land in the redevelopment area controlled by WARC. However, WARC voluntarily gave up this control and right in the 1989 amendment to the 99 agreement it had with Authority.

Also, although City originally prevented Authority from owning and redeveloping land in the redevelopment area, in 1988 City lifted those restrictions. Points denied.

### III.

■ In its third point, WARC alleges the trial court erred "in holding that the City and Authority may redevelop the Lennox a second time under chapter 99 . . ., after it had been redeveloped under chapter 353." WARC contends that "[s]uch 're-redevelopment' is neither contemplated nor authorized by the governing statutes or contracts."

In support of its contention, WARC relies solely on *Board of Education v. City of St. Louis*, 879 S.W.2d 530 (Mo. banc 1994). Its reliance is misplaced.

In *Board of Education*, the court addressed the issue of whether land redeveloped under chapter 353 could be redeveloped under chapter 99 before the end of the 25 year tax relief period set out in chapter 353. *Id.* at 531. The court held that "[u]pon each new finding of blight, the General Assembly may authorize up to twenty-five years of additional tax relief." *Id.* at 533. Essentially, redevelopment under Chapter 99 is allowed even after redevelopment under Chapter 353 has taken place.

While *Board of Education* is not entirely on point, it does give guidance. In the case before us, the property was declared blighted under chapter 353 and later under chapter 99. After that, the chapter 99 plan was amended. The holding in *Board of Edu-*

*cation* indicates the need for flexible programs. Point denied.

### IV.

In its final point, WARC alleges the trial court erred in granting summary judgment. WARC "acknowledges that there are no disputed *material* issues of fact." (emphasis original). However, it goes on to state that "there are many disputed facts." WARC asks that if this court determines any disputed facts are material, that we reverse the summary judgment.

We have examined the "disputed facts" pointed out by WARC and do not find any of them to be material. Point denied.

The trial court's judgment is affirmed.

AHRENS, P.J., concurs.

KAROHL, J., concurs.