Mary R. Russell, Judge,
dissenting.'
A. Introduction
*414 I respectfully dissent. HB 150 is valid and enforceable because the General Assembly followed the procedures required by the Missouri Constitution for passing a bill' over the governor’s objections. To reach its result invalidating the substantive provisions of the bill, the majority opinion reads into the text of article III, section 32 of the Missouri Constitution limitations on the plenary power of the legislature that do not appear in the plain language of the section. This reading departs from settled precedent of this Court construing constitutional provisions in favor of the plenary power of the legislature and upholding legislative acts unless they clearly and undoubtedly violate constitutional limitations. No such showing has been made here. The judgment of the circuit court should be affirmed.
B. The General Assembly has the power to override a veto of any bill during the veto session created by article III, section 32 of the Missouri Constitution

1. When the constitution imposes no explicit limitations on the legislature, the General Assembly has plenary power to carry out its legislative duties

Appellants argue, and the majority opinion agrees, that article III, section 32 constitutes a procedural limitation on the power of the General Assembly to override a veto. A constitutional limitation, however, must be strictly construed by this Court in favor of the plenary power of the legislature. Bd. Of Educ. Of City of St. Louis v. City of St. Louis, 879 S.W.2d 530, 533 (Mo. banc 1994). This Court has repeatedly recognized the plenary power of the General Assembly to “make, amend and repeal laws for Missouri.” State Auditor v. Joint Comm, on Legislative Research, 956 S.W.2d 228, 230-31 (Mo. banc 1997)., The legislature has “the power to do whatever is necessary to perform its functions except as expressly restrained by the Constitution.” Liberty Oil Co. v. Dir. of Revenue, 813 S.W.2d 296, 297 (Mo. banc 1991).
In recognition of the legislature’s plenary power, attacks against legislative action based on constitutionally imposed procedural limitations are not favored. Hammer schmidt v. Boone Cnty., 877 S.W.2d 98, 102 (Mo. banc 1994). This Court will uphold a statute against such an attack unless the act clearly and undoubtedly violates the constitutional limitation. Brown v. Moms, 365 Mo. 946, 290 S.W.2d 160, 167 (Mo. banc 1956). Any doubt as to the validity of a legislative action should be resolved in favor of the action taken if it is possible to do so by any reasonable construction of the constitution. Liberty Oil Co., 813 S.W.2d at 297.
To conclude that HB 150 is unenforceable due to the procedure followed by the legislature in overriding the governor’s veto, the majority opinion was required to find that (1) the Constitution expressly restrained the General Assembly from acting as it did and (2) no reasonable construction of the constitution supported the validity of the legislature’s actions. As discussed below, no such finding has been made here.

2. The plain language of article III, section 32 permits the legislature to reconsider any vetoed bills during its veto session

The provisions of article III, section 32 create a veto session automatically when certain conditions are, met. The veto session is triggered “[i]f the governor returns any bill with his objections” on or after the fifth day before the end of the regular session. Mo. Const, art. Ill, sec. 32 (emphasis added). Once & late vetoed bill triggers the veto session, the legislature reconvenes for a period of not more than ten *415 days “for the sole purpose of considering bills returned by the governor.” Id. (emphasis added).
Words used in constitutional provisions must be given their plain, ordinary, and natural meaning. Wright-Jones v. Nasheed, 368 S.W.3d 157, 159 (Mo. banc 2012). According to the plain language of article III, section 32, a single bill that is vetoed after a certain point in the regular session gives rise to the automatic ten day veto session. After the veto session is triggered, the General Assembly may reconsider “bills” returned by the governor. The use of the plural word “bills” is significant here. While it only takes a single late vetoed bill to trigger the veto session, article III, section 32 does not limit the legislature to considering only that late vetoed bill during the veto session.[1] Nor does the provision contain any language explicitly limiting the legislature to considering only other late vetoed bills that would have been capable of activating the veto session. Instead, a natural reading of “bills returned by the governor” includes all vetoed bills, not just those that were vetoed late in the session.

3. The history of article III, section 32 supports the conclusion that it does not prohibit the legislature from considering early vetoed bills during the veto session

Appellants’ argument that the phrase “bills returned by the governor” should be interpreted to include only late vetoed bills not only misconstrues and distorts the plain language of the provision, but it also fails to find support from the historical development of article III, section 32. See State ex rel. Smith v. Atterbury, 364 Mo. 963, 270 S.W.2d 399, 405 (Mo. banc 1954) (noting that one of the canons of constitutional construction permits or even requires an examination of the historical development of a provision).
Article III, section 32 was first added to the state constitution in 1945 and provided that the legislature could reconsider any vetoed bill “at its convenience.” Mo. Const. art. Ill, sec. 32 (1945). It was then amended in 1970 and 1972 to create separate procedures for reconsidering vetoed bills depending on the year of the legislative session. Under the 1970 and 1972 versions of article III, section 32, if the governor vetoed “any bill” “late”[2] in an odd-numbered year (when the same General Assembly would return for its second session the following year), then “the bill” — singular — -would be placed “at the top of the calendar of the house to which it is returned for consideration when the General Assembly reconvenes the following year.” (emphasis added). If the governor vetoed a bill late during an even-numbered year (when elections would be held and a new General Assembly would convene the following year), the 1970 and 1972 versions of article III, section 32 provided that the General Assembly would automatically reconvene for a period not more than ten days to reconsider “bills” — plural—returned by the governor, (emphasis added).
The original version of article III, section 32 made no mention of late vetoed bills and did not prescribe a special proce *416 dure in the event that the governor returned a bill with objections after adjournment of the legislature.[3] The 1970 and 1972 amendments addressed that concern directly by.creating procedures to ensure that the General Assembly had the opportunity to reconsider late vetoed bills. Further, those amendments,demonstrate that voters knew how to limit which vetoed bills the legislature could reconsider after its regular session ended, but that they chose not to do so under the current text of article III, section 32. Had voters wanted to limit the legislature to considering only late vetoed'bills during the veto session, they needed only to follow or imitate the language previously applicable to odd-numbered years, which explicitly limited the legislature to considering “the bill” subject to a late veto during the next regular session. Instead, voters retained the more expansive language that was reserved for even-numbered years in the previous amendments to the section, which allows the General Assembly to reconsider “bills” vetoed by the governor -when “any bill” is returned late and triggers- the .veto session. :

4. When read in context, article III, section 32 is best interpreted as protecting the legislature’s power to override a veto, not limiting it

Surrounding provisions of-the constitution further emphasize that article III, section 32 is not a limitation of the power of the legislature to reconsider vetoed bills, as Appellants and the majority opinion argue. The provision, instead, protects and enlarges that power. Article III, section 32 is included in the “Legislative Proceedings” subheading of that article. Other sections included in that grouping do impose limitations on the proceedings of the legislature. ’Each of those provisions contains language -clearly and unequivocally limiting legislative or executive action, and the limitations imposed appear expressly both in the title and text of each section.[4] *417 Article III, section 32, which is titled “Vetoed bills reconsidered, when,” is devoid of such explicitly limiting language. ■ Instead, it provides that vetoed bills “stand as reconsidered” in the house to which they are returned without any action by the legislature, and it creates a veto session for the legislature to reconsider, vetoed “bills,” again, without any further action on the part of the legislature. These provisions make no express attempt to limit legislative action but simply make it easier for the legislature to reconsider vetoed= bills. In context, article III, section 32 is more appropriately read as a protection of the legislature’s power to override the governor’s veto, not a limitation on that power.

5. Allowing the legislature to reconsider any vetoed bill during the automatic veto session does not lead to an absurd result

The majority opinion asserts, “If the veto session’s scope is not confined to late vetoed bills...then the legislature could ostensibly address any vetoed bills during the General Assembly’s entire session or during the governor’s term in office,” which, it argues, would be an absurd re-suit., Op. at 412. The concern that the legislature could reconsider any bill that had been vetoed by the governor, even if the bill was vetoed years earlier, is unfounded because the text of article III, section 32 states that vetoed bills must be reconsidered by “the house to which it is returned.” This language imposes an implicit temporal limitation on the reconsideration of vetoed bills due to the manner in which the houses of the General Assembly are formed. In all even-numbered years, elections are held for representative seats in both houses. Consequently, in ,the odd-numbered years, a new General Assembly convenes. Because the house to which a bill is returned must reconsider the bill, future houses, of the General Assembly, composed of different legislative members, could not validly override the veto to a bill originally passed by the houses of a previous General Assembly.[5] Further, the majority opinion gives no explanation as to why it would be absurd for the General Assembly to reconsider a bill vetoed early in the regular session during a veto session held later the same year.[6]
Without reading in language that simply does not appear in its text, article III, *418 section 32 does not prevent the General Assembly from reconsidering any vetoed bills that were passed in its regular session during a subsequent veto session. Appellants’ attempt to impose conjectured or implied limitations on the General Assembly’s veto override process in this regard is unfounded in the plain language, history, and context of article III, section 32. It further fails to account for the legislature’s plenary power to carry out its law-making functions. Adopting the urged interpretation is a deviation from this Court’s settled precedent, which requires the Court to strictly construe constitutional limitations in favor of the legislature’s plenary power and to uphold legislative action as long as a reasonable interpretation of the constitution supports it. Bd. Of Educ. Of City of St. Louis, 879 S.W.2d at 533; Liberty Oil Co., 813 S.W.2d at 297. This Court should find that the General Assembly’s act of overriding the governor’s veto to HB 150 during the 2015 veto session is constitutionally valid.
C. The General Assembly’s override of the veto to HB 150 was valid even though the House of Representatives voted to override the veto prior to the May 2015 adjournment of its regular session and the Senate did so in the subsequent veto session
Concluding that the legislature may reconsider all vetoed bills during a veto session, once triggered, does not end the inquiry in this case. The override of HB 150 was also anomalous because the House of Representatives voted to override the governor’s veto prior to adjournment[7] of its regular session, but the Senate did not act to override the veto until it reconvened for the September 2015 veto session. Consequently, the second issue presented here is whether the General Assembly could validly override a veto when one of the houses voted on the vetoed bill prior to adjournment and the other house acted on the bill after adjournment in the veto session.
The majority opinion agrees with Appellants’ argument that the houses could not act to override the veto in what they characterize as two different sessions. This argument starts with the premise that a regular session of the General Assembly and the subsequent veto session are actually different sessions. That premise is incorrect. The journals for the House of Representatives and the Senate show that the veto session is an extension of the regular session it follows. For example, the journals for September 16, 2015, for both houses indicate that it was the first day of the veto session of the first regular session of the 98th General Assembly, which convened on January 07, 2015[8] In addition, article III, section 32 provides that a session of the General Assembly shall “reconvene” to reconsider vetoed bills if any bill is vetoed late. As a result, the General Assembly does act on a vetoed bill in the same session even when one house votes to override the veto before adjournment of the regular session and the other house *419 does so during the subsequent veto session.
D. Response to the majority opinion: HB 150 was not tabled at the end of the 2015 regular session
The majority opinion summarily states, without explanation, “The senate’s failure to act on HB 150 before the end of the regular legislative session resulted in HB 150 being tabled pursuant to article III, section 20(a).” Op. at 412. This unsupported conclusion, which appears to stem from Appellants’ argument that vetoed bills are irrevocably tabled by the provisions of article III, section 20(a), is misplaced. That section provides that “[a]ll bills in either house remaining on the calendar” after adjournment of the General Assembly’s regular session “are tabled.” Mo. Const. art. Ill, sec. 20(a). Although Appellants acknowledge that article III, section 32 may, in their words, create an “exception” to the tabling provision of article III, section 20(a), they insist that HB 150 was not subject to that exception because it was vetoed early in the session. They point out that the Senate never voted to remove HB 150 from the table before voting to pass the bill over the governor’s veto,[9] and, furthermore, that the Senate could not validly have done so because it was constitutionally limited to reconsidering only late vetoed bills at its veto session.
Appellants’ argument first assumes that vetoed bills are required to be placed on a calendar. This assumption is not founded in the text of the constitution. Again, Appellants are attempting to place limitations on the plenary power of the legislature that do not appear in the plain language of the constitution. Bd. Of Educ. Of City of St Louis, 879 S.W.2d at 533 (constitutional limitations must be strictly construed in favor of the plenary power of the legislature). Article III, section 32 does not require the legislature to place a vetoed bill on any calendar. Instead, the provision describes a vetoed bill as “standing as reconsidered” and requires only that the governor’s objections to the bill be entered on the journal before the house can vote on the “pending” question of whether the bill should pass over the governor’s veto.
Once again, a review of the history of article III, section 32 demonstrates that, as currently written, this provision does not require that a vetoed bill be placed on a calendar. The 1970 and 1972 versions of this provision both explicitly mandated a late vetoed bill from an odd-numbered year to be “placed at the top of the calendar of the house to which it is returned for consideration when the General Assembly reconvenes the following year.” Mo. Const. art. III, sec. 32 (1970) (emphasis added); Mo. Const, art. III, sec. 32 (1972) (emphasis added). On the other hand, the section never required late vetoed bills to be placed on any calendar in even-numbered years, but instead provided that the General Assembly would “automatically reconvene” to consider “bills returned by the governor” at the veto session later the same year. Mo. Const, art. III, sec. 32 (1970); Mo. Const, art. III, sec. 32 (1972).
When the current version of article III, section 32 was adopted in 1988, voters retained the language regarding veto sessions previously applicable in even-numbered years and removed the provisions that had applied to odd-numbered years, including the requirement that a-bill vetoed late in such a year be placed on the calendar for the next year’s session. Mo. Const, art. Ill, sec. 32 (1988). The removal of explicit language requiring vetoed bills to be placed on a calendar is a strong *420 indication that voters ,did not intend to impose such a requirement on the legislature under the terms of the current constitution.
Because vetoed bills are not required to be placed on the calendar by article III, section 32 or any other provision of the Missouri Constitution, they are not “bills remaining on the calendar” as contemplated by article III, section 20(a), Neither are they tabled automatically at the end of the regular, session by that provision.[10] The Senate could — and did — validly call HB 150 up for a veto override vote without taking any steps to remove it from the table.
Even under Appellants’ argument that all bills, including vetoed bills, must be placed on a calendar, and, thus, are potentially subject to tabling under article III, section 20(a), the Senate’s actions with regard to HB 150 would still be proper. Appellants concede that article III, section 32 creates an exception to the tabling requirement of article III, section 20(a) by allowing the legislature to consider vetoed bills during the veto session without removing those bills from the table. But they argue that this exception applies only to late vetoed bills because article III, section 32 restricts the legislature to considering only those bills during its veto session. As discussed above, the plain language of the section contains no such limitation and permits the legislature to reconsider any “bills returned by the governor” during its veto session. Consequently, article III, section 32 prevents all “bills” vetoed by the governor from being tabled at the end of the regular session. For the legislature to reconsider any vetoed bill either before or after adjournment of the same regular session, the legislature need only follow the procedures listed in article III, section 32, and those procedures do not include removing the bill from the table.
E. Conclusion
The Senate’s proceedings with regard to HB 150 complied with the requirements that appear in the plain text of article III, section 32. No other limitation or restriction on the legislature’s plenary power should be appended to the provision, as doing so contradicts the plain language, history, and contextual meaning of the section and departs from established precedent of this Court holding that the General Assembly has “the power to do whatever is necessary to perform its functions except as expressly restrained by the Constitution.” Liberty Oil Co., 813 S.W.2d at 297 (emphasis added). The Senate’s actions here were valid -because, except for the express requirements of the Constitution, the Senate has constitutional authority to determine the rules of its own proceedings. Mo. Const, art. III, sec. 18. It is not in the province of this Court to trespass on that authority. Progress Missouri, Inc. v. Missouri Senate, 494 S.W.3d. 1, 2016 WL 3537654 (Mo.App.2016). The decision of the circuit court should .be affirmed.

. Indeed, one might reasonably wonder why the legislature would need a ten day veto session if it was only allowed to reconsider a single vetoed bill during that time.

. The primary difference in the 1970 and 1972 amendments is how they defined a late vetoed bill. A bill was vetoed late under the 1970 amendment if it was vetoed after adjournment of the regular session. Mo. Const. art. Ill, sec. 32 (1970). In 1972, voters adopted the definition of late vetoed bills found in the current version of the constitutional provision. Mo. Const, art. Ill, sec. 32.

. The majority opinion focuses its historical analysis of article III, section 32 on the removal of language allowing the legislature to reconsider-a vetoed bill’"at its convenience,” concluding that the deletion of such language initiated a gradual restriction of the legislature's power to reconsider vetoed bills. Op. at 412. Not so. The 1970 and 1972 amendments demonstrate a concern for the legislature’s opportunity to reconsider a bill vetoed late in the regular session or after adjournment, not an intention to restrict that power. While' the original provision’s language allowing the house to reconsider a vetoed bill "at its-convenience” may seem expansive, the two-year election cycle for members of the legislature would make review of certain late vetoed bills extremely.difficult under the original text of article III, section 32. For instance, a bill vetoed after the adjournment of the second regular session of a General Assembly could not be reconsidered by the same house in which the bill originated unless the legislature called its own special session by a three-fourths vote of the members of both houses. Otherwise, elections would take place in November following the second regular session, and a new General Assembly would convene for its first regular session the following year. Because article III, section 32 required the bill to be reconsidered by "the house to which it is returned,” the new General Assembly composed of different legislative members . could not reconsider the vetoed bill. MO. CONST, art. Ill, sec. 32 (1945). The 1970 and 1972 amendments resolved that issue by setting out explicit procedures for reconsidering late vetoed bills.

. For instance, article III, section 21 titled "Style of Laws — Bills—Limitation on Amendments — Power of Each House to Originate and Amend Bills — Reading Bills” states, "No law shall be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose.” Article III, section 23, titled "Limitation of Scope of Bills — Contents of Title— Exceptions,” provides, "No bill shall contain more than one subject which shall be clearly expressed in. its title." Article III, section 25 is titled "Limitation on Introduction of Bills” and states, "No bill other than an apprqpria *417 tion bill shall be introduced in either house after the sixtieth legislative day.” Article III, section 31 includes the denomination "Time Limitations” in its title and provides that within 15 days after presentment, the governor "shall return [a bill that has passed both houses] 'to the house in which it originated endorsed with his approval or accompanied by his objections."

. Whether a vetoed bill passed during the first session of the General Assembly could be reconsidered during the second session of the same General Assembly, or during the veto session following the second regular session, is a more nuanced question. While the text of the current version of article III, section 32 does not seem to prohibit such action, previous versions of the provision explicitly contemplated such carryover from the first to the second regular session. Mo. Const, art. III, sec. 32 (1970); Mo. Const, art. III, sec. 32 (1972). The removal' of this language may indicate that voters did not intend for'the legislature to be able to reconsider vetoed bills in a subsequent year of the same General Assembly.

. As the majority opinion, notes,. .the primary objective of the automatic veto session is to give the legislature time to reconsider bills that were vetoed so late that it might not otherwise have had a meaningful opportunity to reconsider them. What the majority opinion fails to explain, however, is why that objective precludes a finding'that the legislature could also reconsider bills that were not vetoed late once the veto session is triggered, which the plain' language of article III, section 32 would seemingly permit.

. Although the General Assembly may debate bills through "the first Friday following the second Monday in May” before they are automatically tabled, it is the constitutionally mandated adjournment date found in article III, section 20(a) that is referenced in this opinion. Mo, Cons. art. Ill, sec. 20(a). This provision requires the General Assembly to adjourn at midnight on May 30 unless it has already adjourned prior to that date. Id.

. Journal of the Senate, 98th Gen. Assemb., 1st, Reg. Sess., at 1, available at http://www, senate.mo,gov/15info/Journals/VDay01.09161 - 26.pdf#toolbar=l; Journal of the House, 98th Gen, Assemb., 1st Reg. Sess., at 1, available at http://www.house.mo.gov/billtracldng/bills 151/jrnpdf/jrnOOl .pdf.

. Senate Rule 75 provides that bills can be removed from the table with a vote of two-thirds of its members.

. The customary practice of the General Assembly supports this finding. The General Assembly does not vote to remove a vetoed bill from the table before reconsidering it during the veto session, nor does it appear that the houses consistently place vetoed bills on their formal calendars before taking them up for a vote. For instance, HB 150 never appeared on the Senate's calendar as a vetoed bill. Similarly, SB 509, which was truly agreed to and finally passed during the 2014 regular session, was vetoed by the governor on May 1, 2014. The Senate voted to override the veto on' May 5, 2014, but SB 509 did not appear on the Senate calendar before the Senate voted to override the veto. Journal of the Senate, 97th Gen. Assemb., 2nd Reg. Sess„ at 1255-259, available at http://www.senate.mo.gov/14 info/Journals/RDay6205051250-1287. pdf#toolbar=l.